STATE of Tennessee, Appellant,

·v.

Shelby SHRUM and Johnny Tittle a/k/a Johnny Shrum, Defendants-Appellees.

Supreme Court of Tennessee,
at Nashville.

Dec. 30, 1982.

David Himmelreich, James A. DeLanis, Asst. Attys. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellant.

Michael Edwards, Hendersonville, for defendants-appellees.

OPINION

DROWOTA, Justice.

We granted the State's Rule 11 application for permission to appeal in order to consider two issues raised by the State: (1) whether the search of the car in which the Defendants were riding and the seizure of stolen tires from that car were reasonable under the Fourth Amendment, and (2) if the seizure was illegal, can the State retry the Defendants on other evidence, or does double jeopardy bar retrial.

THE FACTS

The Defendants Shelby Shrum and her son Johnny Tittle (Shrum), lived in a trailer with Ronnie Kerr. The State's proof, supported by the testimony of Ronnie Kerr (tried and convicted separately), showed that Kerr and the Defendant Tittle stole the property in question from Earl Dunn's Pontiac. Thereafter, the property was tak-

en to Defendant Shrum's mobile home. The proof further showed that Shelby Shrum was aware that the property was stolen.

Proof with regard to the search and seizure showed that Deputy James Stark of the Sumner County Sheriff's Department, received a tip from a confidential informant that he "thought there was a theft ring going on" in a certain mobile home owned by Shelby Shrum. The informant told Stark that he had "seen several tires and wheels" inside, that the tires appeared to be new, and that each day the Defendants were putting a few tires in automobiles and taking them off, and returning without them. On March 24, 1978, at about 8 a.m., Stark transmitted this information to his superior, Lt. George Farmer. Acting on this information, Farmer and Stark set up surveillance in the form of a visual stakeout of the trailer park at about 9 a.m. Stark was at the entrance of the park and Farmer was on a hill overlooking the park, watching the Shrum trailer through binoculars. As Farmer watched, he saw a person he recognized as Ronnie Kerr emerge from the trailer, drive a Mustang automobile to the back, place two tires and wheels in the back seat and two in the trunk and return the car to its original parking place. Approximately five to ten minutes later, Kerr re-emerged from the mobile home with Shelby Shrum, and the two drove out of the trailer park in the automobile containing the wheels. Both officers, in separate cars, tailed the Defendants' car. While doing so, Farmer ran a check on the vehicle's license tags. The tag number was reported to be registered to Shelby Shrum, but it was also reported to be registered to a different automobile from the Mustang that Kerr was driving.

Farmer testified that he felt he did not have sufficient probable cause to procure a search warrant at this time, but he said he knew enough at this point to radio Stark to stop the car for investigation "because of what I'd observed plus the information we had obtained through Mr. Stark," which gave him "reason enough to believe they [the tires] were stolen." Stark put on his blue lights, but the Mustang pulled into a service station almost simultaneously. Kerr testified that he stopped to get gas and did not see the blue lights until he had come to a stop at the pumps. The stop occurred at approximately 11:25 a.m. After Kerr had gotten out to pump gas, Stark approached him and asked to see his driver's license, which Kerr did not have.

While Stark was talking with Kerr about his driver's license, Farmer approached the automobile to speak to Mrs. Shrum, and saw "two fairly brand new tires with rally wheels" in the back seat of the automobile in plain view. This was the first indication to Farmer that the tires loaded into the car earlier were new tires.

Farmer then went back to the patrol car to talk with Kerr. After advising him of his rights and telling him why they were there, he questioned Kerr about the tires, asking, inter alia, "where they come from, where they were headed with them, who they belonged to." Farmer said Kerr was evasive in his answers and "mumbled" in responding to the questions. Farmer asked Kerr for permission to search the vehicle and the trunk, and Kerr consented. Kerr told Farmer there were two other tires in the trunk, "he told me how to open the trunk." Farmer said Shelby Shrum showed him the location of a screwdriver (there was no lock on the trunk) which was used to open the trunk. Two more tires and rally wheels were found in the trunk. Kerr was arrested for driving without a license and taken to the county jail.

Shelby Shrum was not arrested, and she drove the automobile home. Prior to Shelby Shrum's departure, Farmer made the decision to seize the tires. He decided that he had probable cause to believe the tires and wheels were stolen property because of the fact that Kerr had been "sort of evasive in his answers and gave me no direct answer." He said, "If there had been some

plausible excuse why they had them or they could have showed me something that they belonged to them, then probably as not, I wouldn't have confiscated them." On the other hand, Farmer said he did not have at this time any information about a specific tire robbery, and did not know who had stolen the tires. He, therefore, made no arrests, explaining, "I'm familiar with Shelby Jean Shrum and her son and Ronnie Kerr. I knew that if the tires did come up stolen that I had no trouble in finding them."

In the ensuing investigation, it was discovered that the tires and wheels and others, in addition to a pair of bucket seats, had been stolen from the Earl Dunn Pontiac lot. The Defendants were charged under a presentment with concealing stolen property over the value of $200, the property consisting of twelve automobile tires and wheels and a bucket seat. The petit jury convicted them of the offense charged and fixed their punishment at not less than three nor more than five years imprisonment.

The Court of Criminal Appeals reversed and dismissed, holding that the seizure of the tires and wheels was without probable cause, that such evidence should have been suppressed, and that without such evidence the proof was insufficient to support the verdict.

I

■ The first issue raised by the State is whether there was a constitutional search of the car and seizure of the stolen tires. This was a warrantless search and seizure and as such must be analyzed under the vehicle exception to the warrant requirement.[1] The vehicle exception permits such a warrantless search if the police officer had probable cause to believe the items are evidence of a crime, and if there are exigent circumstances necessitating an imme-

diate search and seizure. *Houston v. State,* 593 S.W.2d 267, 271 (Tenn.1980); *Fuqua v. Armour,* 543 S.W.2d 64, 66 (Tenn.1976).

■ There is no question as to whether the search itself was permissible. The evidence is uncontradicted that the Defendants stopped for gas without regard to the blue flashing lights of the police car, and that two of the tires were in plain view of the policeman who merely walked by the car in a place where the public, and, therefore, the policeman, had a right to be. Moreover, there is no question but that exigent circumstances existed at the time of the search and seizure. From the time the police officers saw the tires being loaded into the car until the time of the seizure, the items were in a car containing two persons either of whom could have driven it away from the place where it was temporarily stopped. After Kerr's arrest, Shelby Shrum could easily have driven the car and the evidence out of the jurisdiction. There was no significant period of time during this interval to procure a warrant, and a failure to seize the items would have been to risk losing them forever. This was, in fact, a classic case of the kind of exigency which excuses the warrant requirement. *See, e.g., Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Hawkins v. State,* 543 S.W.2d 606 (Tenn.Cr.App. 1976).

■ The primary question is, therefore, whether there was probable cause to believe the tires were stolen so that they could be seized without a warrant. The basis of the finding of probable cause in this case was the informant's tip. The tip consisted of two elements: the conclusion of the informant that the tires were stolen, and the underlying facts upon which he based his conclusion. Moreover, the record shows that the informant was reliable, having furnished reliable information in the past, and having never furnished unreliable informa-

1. The lower courts correctly did not consider the seizure to fall within the "search incident to arrest" exception, since Kerr's arrest for having no license was unrelated to the tires.

tion. These factors appear to us to pass the two-part test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which permits the information furnished by a confidential informant to supply probable cause where the magistrate can be assured of (1) his basis of knowledge and (2) his veracity.

It should be pointed out that the sum of these factors did not necessarily add up to evidence of criminal activity. The Court of Criminal Appeals emphasized that the activity of the Defendants was not inconsistent with lawful behavior and that, therefore, the informant's conclusion was unjustified.

■ Both the State and Lt. Farmer concede that the information obtained from the informant was insufficient alone to produce enough probable cause to justify either procurement of a warrant or a warrantless search. But other factors arose, prior to the seizure, between the time Farmer received the tip and his decision to seize. Probable cause need not rest on an informant's tip alone, but may be supplemented by direct observation by the officers or a combination of the two. *See* 1 Ringel, *Searches and Seizures, Arrests and Confessions,* § 4.3 (1980).

While it is true that the activity described by the informant is not necessarily inconsistent with lawful activity, it is also not necessarily inconsistent with unlawful activity. What the Court of Criminal Appeals failed to point out were the other cumulative factors which appeared to the police officer to be inconsistent with lawful activity. Primary among these, according to Farmer's testimony, was Kerr's evasiveness in answering questions as to the ownership of the tires. Farmer testified that "My reason for confiscating the tires was, one, we did have information they were stolen from where we did not know at that point. Secondly, the conversation with Mr. Kerr and his evasiveness concerning my questions about the tires and so forth. That led

me to believe they were stolen. Based on this and me believing I had probable cause to confiscate them, then I did so.... As far as the confiscation of the tires, if there had been some plausible excuse why they had them or they could have showed me something that they belonged to them, then probably as not I wouldn't have confiscated them."

Response to questioning by police officers is a common source of probable cause determinations. In 1 LaFave, *Search and Seizure,* § 3.6(f), at 671, *et seq.* (1978), the author observes:

> Response to police questioning ... frequently is an ingredient in the probable cause determination.

> Just as a satisfactory explanation of circumstances previously appearing suspicious to the interrogating officer will likely necessitate the conclusion that those suspicions do not then amount to probable cause, responses by the suspect which the officer knows to be false, or which are implausible, conflicting, evasive or unresponsive may well constitute probable cause when considered together with the prior suspicions.

*Id.* at 672.

In *State v. Moore,* 580 S.W.2d 747 (Mo. 1979), the Court found probable cause based upon, *inter alia,* the corroboration of an informant's tip by an "implausible explanation" given by the defendant during an investigatory stop. In *Hawkins v. State,* 543 S.W.2d at 610, evasive and implausible statements played a significant part in a warrantless vehicular search and seizure. There, a cruising policeman spotted a car parked in an unusual place and stopped to investigate. He found the defendant-driver's son in the back seat holding "two large heaters and a window fan." When asked about the items, defendant said he found them in a "dumpster." This response, taken cumulatively with other circumstances, contributed to the Court's finding of probable cause.

■ We are of the opinion that there was probable cause to seize the tires in this case,

taking into consideration the cumulative factors known to the police, *viz.*, the reliable informant's tip, the evasive and thus corroborative responses of Kerr, and, to a lesser extent, the direct observations of the police, Farmer's acquaintance with the Defendants, and the improper registration of the car and failure of Kerr to be licensed—minor factors which nevertheless contributed to the suspicious aura of the event.

The Court of Criminal Appeals erred in finding the seizure illegal. The officers had probable cause and exigent circumstances justifying the seizure of the tires. The judgment of the Court of Criminal Appeals is accordingly reversed and the judgment of the trial court reinstated.

## II

We do not need to reach the second issue because of our holding on the preceding issue. However, we think it important to point out that the Court of Criminal Appeals reversed, because of its conclusion that the seizure was unconstitutional, and dismissed. Although no reason was given for the dismissal, it was apparently based on the authority of the U.S. Supreme Court's decisions in *Burks v. U.S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), both cases holding that a new trial is impermissible where reversal was occasioned by insufficient evidence.

In *State v. Longstreet*, 619 S.W.2d 97 (Tenn.1981), this Court affirmed a holding of the Court of Criminal Appeals that the search and seizure of a vehicle violated the Fourth Amendment. However, this Court modified the order of the Court of Criminal Appeals insofar as said order dismissed the prosecution for insufficiency of the remaining evidence. We held that the *Burks* and *Massey* rule does not extend to cases in which reversal was occasioned by trial error, such as the improper receipt of hearsay evidence or evidence resulting from

an illegal wiretap. We held that the retrial of the defendant in *Longstreet* would not violate the Double-Jeopardy Clause. Likewise, in this case, retrial would not constitute double jeopardy.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.