**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JANUARY SESSION, 1998**

FILED

March 31, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 01C01-9702-CR-00064** |
| | **)** | |
| Appellant, | **)** | |
| | **)** | |
| | **)** | **SUMNER COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. JANE WHEATCRAFT** |
| **DENNIS R. ENGLAND,** | **)** | **JUDGE** |
| | **)** | |
| Appellee. | **)** | (State Appeal-Vehicle Search) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF SUMNER COUNTY**

FOR THE APPELLEE:

R. EDDIE DAVIDSON
601 Woodland Street
Nashville, TN 37206

FOR THE APPELLANT:

JOHN KNOX WALKUP
Attorney General and Reporter

DARYL J. BRAND
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

LAWRENCE RAY WHITLEY
District Attorney General

DEE GAY
Assistant District Attorney General
113 West Main Street
Gallatin, TN 37066

OPINION FILED _____

REVERSED AND REMANDED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal by the State as of right pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure. The Defendant filed a motion to suppress evidence seized during a search of his automobile. The trial judge determined that the evidence had been illegally seized and granted the Defendant's motion to suppress. We reverse the judgment of the trial court and remand this case for further proceedings.

On March 13, 1996, at about 9:10 p.m., Sumner County Deputy Sheriff Jerry Carpenter was on routine patrol with his canine "partner," Coaster, a three-year old golden retriever certified by the United States Police K-9 Association as a drug detection dog. The deputy observed the Defendant's pickup truck and noticed that the vehicle had no light illuminating the rear license plate as required by law.[1] Because of this vehicle lighting law violation, the officer activated his blue lights and stopped the Defendant's vehicle. The officer advised the Defendant that he had stopped him for not having a light illuminating his license plate and asked the Defendant for his driver's license. The officer testified that he did not know the Defendant and as far as he knew, had never had any prior contact with him. The officer radioed his dispatcher with the Defendant's driver's license number for verification that the license was valid and to check for any possible outstanding warrants against the Defendant.

---

[1] See Tenn. Code Ann. § 55-9-404.

The officer said that the Defendant had gotten out of his vehicle, leaving the driver's side door open, and gone to the back of the vehicle to check the area around the license plate. At this time, the deputy struck up a conversation with the Defendant, asking him if he had ever been arrested before. The Defendant answered that he had. The officer asked him what he had been arrested for, and the Defendant said that it was over some "trouble with his ex-wife." The officer asked if it was "domestic-related trouble," but the Defendant advised that he had wrecked his truck and had been arrested "for dope." When the officer asked the Defendant what kind of "dope" the Defendant stated that it had been marijuana. The officer then asked if the Defendant had marijuana in his vehicle at that time and said that the Defendant then "became visibly nervous by shaking and trembling." He said that the Defendant "kind of stammered a reply, but it was no."

The deputy said that he then asked the Defendant if he would give consent for a search of his vehicle. He said the Defendant asked what would happen if he did not consent to the search and the deputy replied that nothing would happen and that "once I got the computer check back, he would receive a written warning for the violation of light law and he would be free to go." The Defendant advised him that he would rather that his vehicle not be searched.

At about this time, another officer, Deputy Thomas, arrived on the scene. Deputy Carpenter asked the Defendant to stand with Deputy Thomas, and while he was doing so Deputy Carpenter got his K-9 partner, Coaster, from his patrol car and brought him to the Defendant's vehicle for the dog to "sniff" around the perimeter of the Defendant's vehicle. The driver's side door remained open from the time the Defendant had gotten out of the vehicle. As the dog approached the

-3-

open door, the dog indicated a positive at the bottom of the door jam.  Deputy Carpenter then allowed the dog into the vehicle at which time the dog gave a positive indication on a blue denim jacket lying in the front seat.  Inside the denim jacket, the deputy found a large hunting knife and what he described as a "large amount" of marijuana.  A further search found "weighing scales, several empty plastic bags, several marijuana roaches, and a marijuana pipe."

The deputy stated that about the time the Defendant was arrested and placed in custody, the dispatcher radioed back with information that the Defendant's driver's license was valid and that there were no outstanding warrants for him.  The Defendant was subsequently indicted for one count of possessing more than one-half ounce of marijuana with the intent to sell or deliver and one count of unlawful possession of drug paraphernalia.[2]  The Defendant filed a motion to suppress all evidence taken from his vehicle, asserting that the evidence was illegally seized.  The trial judge conducted an evidentiary hearing on the motion, during which Deputy Carpenter testified concerning the facts as stated herein.  At the conclusion of the hearing the trial judge took the matter under advisement and later entered findings including the following:

> There is no question that the defendant was lawfully stopped by the officer for a violation of T.C.A. 55-19-404.  Further, the Court finds that the detention was not unduly long, but that it was for a reasonable length of time and purpose.  While the defendant was being detained the officer engaged the defendant in conversation and determined that he had a previous drug conviction which prompted the officer to ask for consent to search the defendant's vehicle.  This request was denied.  The officer's dog was then released from the patrol unit and a "sniff" was conducted resulting in a "hit" indicating the presence of drugs.

---

[2]Tenn. Code Ann. § 39-17-417, -425.

The drug dog is specially trained and is able to use his sense of smell in much the same way as the human officer uses his sense of sight. The case of U.S. v. Place, 103 S.Ct. 2637 (1983) stands for the proposition that there is no expectation of privacy in contraband and a dog sniff does not violate any privacy interest and is, therefore, not a search under the Fourth Amendment. Had the officer, upon stopping the car, gotten the dog out to do a sniff, the finding of the drugs would be admissible in this court's opinion. In the case at bar, he, the defendant, was being held pending a license check and was not free to leave. During the duration of the hold he was questioned by the officer and a request was made to search his vehicle. The officer used his refusal as the basis on which to get the dog out of the car to conduct a "sniff." Once the defendant refused to have his car searched as the result of custodial questioning, that should have ended the matter.

The trial judge therefore entered an order granting the Defendant's motion to suppress the evidence. It is from the trial court's order suppressing the evidence that the State appeals.

On appeal, the State asserts, as the trial judge found, that the Defendant was lawfully stopped and that the length of his detention was reasonable. The State argues that a "dog sniff" is not a "search" under the Fourth Amendment prohibition of unreasonable searches and seizures. Thus, because the Defendant was being legally detained, the State argues that neither probable cause nor reasonable suspicion was needed prior to the initiation of the "dog sniff" around the Defendant's vehicle. The State then argues that once the dog gave a positive indication for the presence of illegal drugs, this gave the officer probable cause to conduct the further search of the vehicle. The State argues that the fact that the officer used the Defendant's refusal to consent to the search as one of the reasons for deciding to conduct the "dog sniff" around the car, which the trial court found objectionable, is simply irrelevant.

In response, the Defendant, while admitting that the officer made a lawful stop, asserts that his detention became unreasonable when he was directed to stand with another officer while the "dog sniff" took place. He argues that probable cause, or at least a reasonable suspicion, should be required to justify the "dog sniff/search" of his vehicle.

Any warrantless search is presumptively unreasonable under the Fourth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). However, there are a few exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Fuqua v. Armour, 543 S.W.2d 64, 66 (Tenn. 1976). Those who seek to except a search from the requirement must show that the officers had compelling reasons to justify the search. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, reh'g denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); Fuqua, 543 S.W.2d at 67. Before the fruits of a warrantless search are admissible as evidence, the State must establish by a preponderance of the evidence that the search falls into one of the narrowly drawn exceptions to the warrant requirement. State v. Shaw, 603 S.W.2d 741, 743 (Tenn. Crim. App. 1980).

Warrantless searches of automobiles under certain circumstances are allowed. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925); State v. Shrum, 643 S.W.2d 891, 893 (Tenn. 1982). An automobile may be searched without a warrant if the officer has probable cause to believe that the vehicle contains contraband and if exigent circumstances require an immediate search. Carroll, 267 U.S. at 149, 45 S.Ct. at 283-84. In Chambers v.

-6-

Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh'g denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), the Court held that where probable cause to search exists, the immediate search of a vehicle is no more intrusive than a seizure and subsequent search. Therefore, the Fourth Amendment authorizes the police either to seize and hold the vehicle until a search warrant has issued or to search the vehicle immediately. Chambers, 399 U.S. at 52, 90 S.Ct. at 1981.

Clearly, the temporary detention of individuals during the stop of a vehicle by police, even if only for a brief period and for a very limited purpose, constitutes a "seizure" which implicates the protection of both the state and federal constitutional provisions. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993). As a general rule, however, the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred. Id. In such a case, the stop is valid even if it is in fact a "pretextual stop." Whren, 116 S.Ct. at 1774; State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997). In the case sub judice, the record clearly supports the trial court's finding that the Defendant's vehicle was lawfully stopped for a traffic offense, and the Defendant concedes this point in this appeal.

Once the officer had legally stopped the Defendant's vehicle, he properly proceeded with an investigatory detention, also sometimes referred to as a Terry stop. Although less intrusive than a full-blown arrest, an investigatory detention

is subject to the constitutional protection of the Fourth Amendment against "unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Interactions between the police and the public that constitute seizures but not arrests are judged by their reasonableness rather than by a showing of probable cause. Id. The reasonableness of the intrusion is "judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." Pully, 863 S.W.2d at 30 (citing Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).

The trial court found that the length of the detention, for the purpose of verifying the validity of the Defendant's driver's license and to check for possible outstanding warrants, was reasonable. We believe the record supports this finding. During this otherwise legal and proper detention, the officer decided to have his drug detection dog conduct a "sniff" or "sweep" around the outside of the Defendant's vehicle. A sweep of the outside of a vehicle by a trained drug detection dog does not constitute a search for Fourth Amendment purposes, but is a legitimate investigative technique. See United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); Merrett v. Moore, 58 F.3d 1547, 1553 (11th Cir. 1995), cert. denied, 117 S.Ct. 58, 136 L.Ed.2d 21 (1996); Romo v. Champion, 46 F.3d 1013, 1018 (10th Cir. 1995), cert. denied, 116 S.Ct. 387, 133 L.Ed.2d 309 (1995); United States v. Jeffus, 22 F.3d 554, 557 (4th Cir. 1994); United States v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990). See also State v. James Smith, Jr., C.C.A. No. 38, Shelby County (Tenn. Crim. App., Jackson, Dec. 14, 1988).

Because the officer could have taken this action at any time during the otherwise legal detention, we do not believe that the fact that he took this action only after the Defendant refused to consent to the search is reason to render the search illegal. See State v. David Price, C.C.A. No. 02C01-9610-CC-00356, Weakley County (Tenn. Crim. App., Jackson, Aug. 25, 1997).

The only remaining issue is whether the positive indication by the drug detection dog furnished probable cause for the search of the vehicle which led to discovery of the evidence. We believe the weight of authority supports the finding of probable cause based on the action of a trained narcotics detection dog. See Romo, 46 F.3d at 1020; Jeffus, 22 F.3d at 557; State v. James Smith, Jr., C.C.A. No. 38, Shelby County (Tenn. Crim. App., Jackson, Dec. 14, 1988). We believe this position is reasonable and sound.

In summary, the automobile lighting violation provided the officer with the legal justification for the stop of the vehicle. While the vehicle was being legally detained, neither probable cause nor reasonable suspicion was needed for the officer to allow the drug dog to "sniff" or "sweep" the exterior of the vehicle. When the dog indicated positive for the presence of illegal drugs in the vehicle, this action provided the officer with probable cause to search the vehicle for the drugs.

The judgment of the trial court suppressing the evidence is reversed. This case is remanded for further proceedings.

_____
DAVID H. WELLES, JUDGE


CONCUR:



_____
JOHN H. PEAY, JUDGE


_____
JERRY L. SMITH, JUDGE