IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 18, 2001

## STATE OF TENNESSEE v. DAMON L. BAUGH

**Direct Appeal from the Circuit Court for Williamson County**
**No. 1700-209    Donald P. Harris, Judge**

**No. M2001-00895-CCA-R3-CD - Filed September 27, 2002**

The Williamson County Grand Jury indicted the Defendant for one count of possession of more than 0.5 grams of cocaine for resale, a Class B felony, and for one count of simple possession of marijuana, a Class A misdemeanor. The Defendant filed a motion to suppress the cocaine and marijuana obtained during his arrest, alleging that the search of his car was unconstitutional. Following a hearing, the trial court denied the motion to suppress. A Williamson County jury convicted the Defendant of the charged offenses. The Defendant now appeals, arguing that the trial court erred in failing to suppress the cocaine and marijuana obtained pursuant to his arrest. Concluding that the search of the Defendant's car was constitutional, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

F. Shayne Brasfield, Franklin, Tennessee, for the Appellant, Damon L. Baugh.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

### I. FACTS

A suppression hearing was held at which only Officer Tom Justus and Officer Craig Wright testified. After a thorough review of the record, we note that the testimony adduced at the suppression hearing by Officer Wright and Officer Justus was substantially the same as that adduced at the trial. Thus, the facts of this opinion are taken from the trial, with any discrepancies from the hearing on the motion to suppress indicated.

Officer Tom Justus testified that on April 21, 2000, an informant, April McNabb, came to the police station to "work off" recent charges against her for drug possession. Officer Justus, along with his partner, Officer J. P. Taylor, provided the informant with a cellular phone and instructed her to initiate a drug purchase. According to Justus, the informant called a dealer, who identified himself as "Terry D.," and requested an "eight ball" of cocaine. Justus explained that an "eight ball" is one eighth of an ounce or 3.5 grams of cocaine. Justus told the informant to set up the transaction at Liberty School. Justus testified that according to the informant, Terry D. could not meet her, so he sent someone in his place. Justus stated that the informant told him that the person whom Terry D. was sending wanted to meet on the "west side" of town, so the location was changed to a deserted parking lot across town. Justus stated that the informant told him that the new dealer was in a brown car.[1]

Justus testified that the informant and police immediately went to the new location. Once there, the informant got out of the car that she was in and went into some nearby bushes for "safety reasons." Justus explained that the informant was instructed by the police to act like she was trespassing. Justus testified that soon thereafter, a brown sedan in "rough condition" pulled up beside the informant's car. Justus testified that the location was "pretty remote" and that there were no other vehicles besides those of the suspect and the informant at the location.

According to Justus, police approached the suspect's vehicle and identified the driver as the Defendant. Justus recalled that he asked the Defendant why he was in the deserted parking lot, but the Defendant did not respond. Justus testified that police searched the Defendant's person for drugs and weapons and found $401 in cash "loose" in the Defendant's pocket. Officers then searched the car to locate the drugs and found an "eight ball" of cocaine and an ounce of marijuana under the driver's seat. Justus testified that the Defendant was then placed under arrest. Justus recalled that the Defendant told Officer Wright that the drugs belonged to him. On cross-examination, Justus testified that the parking lot did not have any "no trespassing" signs. Justus also stated that he did not issue a citation to the Defendant for trespassing.

Justus testified that the informant had not worked with police in the past, and Justus did not know the informant until just prior to the informant's work on this case when she was arrested on drug charges. Justus acknowledged that he had nothing upon which to base the informant's reliability. Justus also stated that no transaction between the informant and the Defendant ever occurred.

The informant testified that she was twenty years old at the time of trial and that she lived outside of Tennessee. The informant stated that she did not graduate from high school and that she was working two jobs at the time of trial. She also stated that she had an eight-month-old daughter. The informant testified that she had never been convicted of a crime.

---

[1] At the suppression hearing, Officer Justus testified that the informant told him that there was a passenger in the Defendant's vehicle.

The informant testified that prior to her work in this case, she was caught with cocaine by the Franklin Police Department and was "advised" to contact police to "work off" her charges. The informant recalled that, in an effort to work off her charges, she went to the police station on April 21, 2000, and told police that she could set up a drug deal with a man named Terry. She stated that she told police that she had previously purchased drugs from Terry.

The informant testified that she used a cell phone given to her by police and called Terry, but Terry told her that he could not meet her that evening. Instead, Terry told the informant that he would send "one of his boys." The informant recalled that Terry told her the man's name, that the name started with the letter "D," and that the name sounded like "Damian." The informant testified that a meeting was set up in an old bank parking lot in Franklin.

Once at the location, the informant got out of the car and went behind some bushes in an effort to appear to be using the restroom. While in the bushes, the informant saw a "big brown" car pull into the parking lot. The informant testified that she saw the driver get out of the car. She stated that although she was expecting only one person, there was a passenger in the vehicle. The informant testified that she did not know the Defendant. She also testified that there was no audio or video surveillance on the night of the Defendant's arrest.

Officer J. P. Taylor testified that he watched Officer Justus search the Defendant's vehicle and find cocaine and marijuana under the driver's seat. Taylor testified that he was supposed to pretend that he was searching the informant's car and then back up Officer Justus. Taylor testified that police decided to release the brown vehicle to the passenger of the car.

Officer Craig Wright testified that he decided to "back up" Officers Justus and Taylor. Wright testified that he pulled his vehicle behind the brown sedan. Wright stated that he informed Officers Justus and Taylor that the Defendant was on parole or probation for a felony drug offense.[2] Wright testified that after the Defendant was taken into custody and was seated in the back of a police car, he heard the Defendant say that the drugs found in the brown vehicle belonged to him. Wright testified that the Defendant made the statement after the passenger of the vehicle said that he "couldn't take the charge." Wright testified that the Defendant had been "Mirandized" before he made the statement.

Glen Everett with the Tennessee Bureau of Investigation (TBI) crime lab testified that he analyzed the drugs taken from the Defendant's vehicle. According to Everett, twenty-one grams of marijuana and three and a half grams of cocaine were submitted to him for testing.

## II. ANALYSIS

---

[2] At the suppression hearing, Officer Justus testified that Officer Wright had informed him that the Defendant was on parole or probation for a felony drug offense.

We initially note that the State urges this Court to deem all of the Defendant's arguments waived due to his failure to cite to the videotape record in this case. See Tenn. Ct. Crim. App. R. 10(b). We must caution counsel for the Defendant that the State's point is well taken and that counsel should in all future briefs comply with the rules and properly cite to the record. However, in the interest of judicial economy, we choose to address the issues raised in this appeal on the merits.

The Defendant argues that the trial court erred in failing to suppress evidence obtained pursuant to the Defendant's arrest. The trial court in this case found that probable cause existed for officers to make a warrantless search of the Defendant's vehicle. At the conclusion of the sentencing hearing, the trial court noted that the informant had planned to meet a dealer at one location; however, the location was changed and within a "matter of minutes," a vehicle fitting the description and containing the exact number of occupants given by the informant arrived at the deserted parking lot. Thus, the trial court found that there was probable cause that the Defendant's vehicle contained contraband. In addition, the trial court found that the inherent mobility of the vehicle was an exigent circumstance allowing for an immediate search of the vehicle.

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Findings of fact made by a trial court in ruling on a motion to suppress are binding upon this Court unless the evidence preponderates against the findings. See id. However, the application of the law to the facts found by the trial court is a question of law which this Court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Article I § 7 of the Tennessee Constitution provides that

> people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Both of these constitutional provisions are intended to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)).

Under both the federal and state constitutions, warrantless searches are presumed unreasonable, and evidence obtained from such a seizure should be suppressed unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). One exception to the search warrant requirement is "caused by the need for immediate action under the circumstances." State v. Parker, 525 S.W.2d 128, 130 (Tenn. 1975). Warrantless searches of automobiles under certain circumstances are allowed. See State v. Shrum, 643 S.W.2d 891, 893 (Tenn. 1982). An automobile may be searched without a warrant if the officer has probable cause to believe that the vehicle contains contraband and if exigent circumstances require an immediate search. Carroll v. United States, 267 U.S. 132, 155-56 (1925); State v. Leveye, 796 S.W.2d 948, 950 (Tenn. 1990). The mobility of a vehicle is an exigent circumstance necessitating an immediate search. See Carroll, 267 U.S. at 153; Shrum, 643 S.W.2d at 893.

In determining whether probable cause exists to make a warrantless search of an automobile based on an informant's tip, the State must establish (1) that the informant had a basis for his or her information that a person was involved in criminal conduct and (2) that the informant is credible or that his or her information is reliable. See State v. Jacumin, 778 S.W.2d 430, 432, 436 (Tenn. 1989). "[W]here a tip fails under either or both of the two prongs, probable cause may still be established by independent police investigative work that corroborates the tip to such an extent that it supports the inference that the informant was reliable and that the informant made the charge on the basis of information obtained in a reliable way." State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997). In addition, "[p]robable cause need not rest on an informant's tip alone, but may be supplemented by direct observation by the officers or a combination of the two." Shrum, 643 S.W.2d. at 894.

The informant who provided the tip about the Defendant's criminal activity had recently been arrested on drug charges and was "working off" the charges. The informant had never provided the police with information before this case. However, several facts supplied by the informant, such as the location of the meeting, the time of the meeting, a description of the suspect's car and the number of occupants, were corroborated by police when they arrived at the scene and support the credibility of the informant. A showing that the informant's tip is reliable may satisfy the credibility prong of the Jacumin test. State v. Simpson, 968 S.W.2d 776, 782 (Tenn. 1998) (citing State v. Ballard, 836 S.W.2d 560, 562 (Tenn. 1992)); see also Jacumin, 778 S.W.2d at 432, 436. We conclude that the credibility of the informant was established.

Regarding the informant's basis of knowledge, the informant stated that she had purchased drugs from a person named Terry in the past. On the date in question, she called Terry to set up a drug transaction, but Terry told her that he was sending someone else in his place. The content of the tip was confirmed when officers arrived at the designated meeting location to find a car matching the description given by the informant. The informant had also stated that the person who was meeting her had a name that sounded like "Damian." Officers identified the driver of the vehicle as Damon Baugh. The circumstances surrounding the tip were sufficient to establish the informant's basis of knowledge.

In addition to the informant's tip, Officer Justus noted that the Defendant was evasive in answering questions. When Justus asked the Defendant why he was in the deserted parking lot, the Defendant said "basically nothing." This response was "inconsistent with lawful activity." Shrum, 643 S.W.2d at 894. "Response to questioning by police officers is a common source of probable cause determinations." Id.

We conclude, as did the trial court, that the police search of the Defendant's vehicle was constitutional. The informant's tip, independent corroboration by officers of that tip, and the unresponsiveness of the Defendant to questioning by officers provided probable cause that the vehicle searched in this case contained contraband. Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE