IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 14, 2025 Session

**STATE OF TENNESSEE v. TERRION AVANTAE JONES**

**Appeal from the Circuit Court for Madison County**
**No. 23-94     Joseph T. Howell, Judge**

_____

**No. W2024-00027-CCA-R3-CD**

_____

A Madison County jury convicted the defendant, Terrion Avantae Jones, of one count of possession of marijuana with intent to sell, one count of possession of marijuana with intent to deliver, two counts of possession of a firearm during the commission of a dangerous felony, and possession of drug paraphernalia, for which he received an effective sentence of four years to be served as three years in confinement at 100% with the remainder to be served on supervised probation. On appeal, the defendant argues the trial court erred in denying his motion to suppress. He also contends the evidence presented at trial was insufficient to support his convictions. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

William W. Gill, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and Jeremy Epperson, District Public Defender, and Parker Dixon, Assistant Public Defender (at trial), for the appellant, Terrion Avantae Jones.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Lee Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On January 30, 2023, the Madison County Grand Jury returned an indictment charging the defendant with one count of possession of marijuana with intent to sell (count one), one count of possession of marijuana with intent to deliver (count two), two counts of possession of a firearm during the commission of a dangerous felony (counts three and four), unlawful possession of a firearm (count five), and possession of drug paraphernalia (count six). The charges arose from a December 23, 2021, incident during which Lieutenant David White with the Jackson Police Department ("JPD") discovered the defendant asleep behind the wheel of his vehicle. The defendant filed a motion to suppress evidence obtained during a search of his vehicle, asserting that the officers made no attempt to determine whether the defendant was intoxicated or having a medical episode before removing him from his vehicle and that the only possible infraction he committed was being asleep at the wheel, a citable offense. The trial court conducted a pre-trial hearing on July 23, 2023.

I.     Motion to Suppress

At the suppression hearing, Lieutenant David White testified that he was on his way home at the end of his shift at approximately 4:30 a.m. when he pulled up next to the defendant at an intersection. The defendant, who was in the left turn lane, appeared to be asleep and "was leaned back with his head slumped over." Lieutenant White honked his horn several times and tripped the siren in his patrol car in an effort to get the defendant's attention, but the defendant remained motionless. Lieutenant White then pulled behind the defendant's vehicle and "initiated [his] emergency lights to make contact with [the defendant]." When Lieutenant White approached the defendant's vehicle, he shined his flashlight inside, knocked on the window, and "hollered" several times before the defendant finally woke up, removed his foot from the brake, and rolled a few feet forward. After coming to a stop, the defendant rolled his window down, and Lieutenant White immediately "smelled an odor of marijuana from inside the vehicle."

Lieutenant White requested backup, and when the other officer approached the defendant's vehicle, he observed a firearm on the passenger floorboard. At that time, the defendant was taken out of the vehicle and frisked. Due to the smell of marijuana, Lieutenant White asked the defendant if he "smoked weed," and the defendant admitted that he did. The defendant was then placed in the back of a patrol car, and the defendant's vehicle was searched.

Officer Timothy McClain with the JPD testified that he responded Lieutenant White's request for backup and that he was wearing his body cam during his interaction with the defendant. A copy of the body cam video was entered into evidence. Upon arriving at the scene, Officer McClain approached the passenger side of the defendant's vehicle and observed a black 9-millimeter Keltec rifle in plain sight on the passenger

floorboard. Additionally, Officer McClain could smell the odor of marijuana coming from the vehicle. Based on the smell of marijuana and the presence of the firearm, the defendant was placed into custody, and a search of the vehicle was conducted. In addition to the rifle, Officer McClain recovered a white backpack on the front passenger seat. Inside the backpack, Officer McClain discovered "four individually wrapped bags of marijuana, approximately 80.7 grams of marijuana, 19 clear unused baggies, [and] a digital Z scale." Officer McClain also discovered $729 in cash in the defendant's wallet.

After its review, the trial court issued an order denying the defendant's motion to suppress the evidence seized from the vehicle, finding Lieutenant White and Officer McClain "conducted a probable cause search of the vehicle due to the odor of marijuana and other circumstances surrounding the stop." The defendant then proceeded to trial.

## II. Trial

At trial, Lieutenant White and Officer McClain testified consistently with the evidence introduced at the suppression hearing. Lieutenant White also testified that when he was frisking the defendant for weapons after removing him from the vehicle, the defendant stated that he smoked "weed" earlier that night. While Lieutenant White was walking the defendant to Officer McClain's patrol car, the defendant was on speaker phone with his mother, and the defendant's mother stated, "He asked you about weed. Tell him you do smoke." Lieutenant White testified that his training and experience has shown that an illegal narcotic coupled with extra packaging material, a scale, and a large sum of money indicates that a person is involved in the "trafficking of narcotics." On cross-examination, Lieutenant White agreed that the odor of marijuana and hemp are indistinguishable. On cross-examination, Officer McClain agreed the defendant's money and vehicle were returned to him following his arrest. Officer McClain also testified that he ran the firearm recovered from the defendant's vehicle through the database, but it came back "not on file," indicating it was not stolen.

Special Agent Carter DePew, a forensic chemistry expert with the Tennessee Bureau of Investigation ("TBI"), analyzed the evidence recovered from the defendant's vehicle. Agent DePew presumptively identified the substance as marijuana with a gross weight of 76.77 grams. Agent DePew testified that the TBI's current policy is to presumptively identify any plant material using a series of tests to determine if the THC concentration is greater than or less than CBD in a ratio comparison. Depending on the results of that analysis, she can presumptively identify the plant material as either hemp or marijuana. Agent DePew testified that on approximately forty prior occasions she performed additional testing on substances that presumptively tested positive as marijuana, and on each occasion, the substance was confirmed to be marijuana. A copy of the lab report was entered into evidence. On cross-examination, Agent DePew testified that prior

to 2019 the TBI's policy did not differentiate between marijuana and hemp because hemp was not legal in Tennessee, and anything that tested positive was reported as marijuana. Agent DePew agreed that the substance found in the defendant's vehicle had "not been confirmed" as marijuana because only a presumptive test was performed.

Following deliberations, the jury found the defendant guilty of one count of possession of marijuana with the intent to sell (count one), one count of possession of marijuana with intent to deliver (count two), two counts of possession of a firearm during the commission of a dangerous felony (counts three and four), and possession of drug paraphernalia (count six). The defendant was acquitted on count five. The trial court subsequently imposed sentences of one year for counts one and two, three years at 100% for counts three and four, and eleven months, twenty-nine days for count six. The trial court merged counts one and two and counts three and four and ordered counts one and six to be served concurrently with each other but consecutive to count three, for an effective sentence of four years to be served as three years in confinement at 100% with the remainder to be served on supervised probation.

The defendant filed a motion for new trial which the trial court denied. This timely appeal followed.

## *Analysis*

On appeal, the defendant contends the trial court erred in denying his motion to suppress. He also contends the evidence presented at trial was insufficient to support his convictions. The State contends that the trial court properly denied the defendant's motion to suppress and that the evidence is sufficient.

## I.    Motion to Suppress

The defendant argues the trial court erred in failing to grant his motion to suppress. Specifically, the defendant contends, while the community caretaking doctrine justified the initiation of the traffic stop and initial interaction with the defendant, officers lacked probable cause to search the defendant's vehicle. According to the defendant, the officers' knowledge at the time they commenced the search of the vehicle, the odor of marijuana and a firearm on the floorboard, was insufficient to establish probable cause. The State contends the trial court properly denied the defendant's motion to suppress.

Suppression issues on appeal are subject to a well-established standard of review. Appellate courts are bound by a trial court's findings of facts determined after a suppression hearing unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. McGee*, No. E2011-01756-CCA-R3-CD, 2012 WL

- 4 -

4017776, at *2 (Tenn. Crim. App. Sept. 13, 2012). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Appellate courts should consider the entire record, affording the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence." *McGee*, 2012 WL 4017776, at *2 (citing *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001)); *see also State v. Sanders*, 452 S.W.3d 300, 306 (Tenn. 2014). However, applying the law to the factual findings of the trial court is a question of law, which is reviewed *de novo* on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee freedom from unreasonable searches and seizures. These guarantees exist to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *see State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629.

The defendant concedes that Lieutenant White was justified in initiating a traffic stop when he observed the defendant asleep in his car at an intersection under the community caretaking doctrine. Pursuant to the community caretaking doctrine, police officers may, "separate from any duties related to the detection or investigation of criminal activity or collection of evidence related to criminal activity, engage in activities that are in furtherance of the general safety and welfare of citizens who may be in peril or otherwise in need of assistance." *State v. Cooke*, No. M2017-01947-CCA-R3-CD, 2019 WL 410423, at *4 (Tenn. Crim. App. Jan. 31, 2019), *no perm. app. filed* (citing *State v. McCormick*, 494 S.W.3d 673, 680-83 (Tenn. 2016)). However, the defendant argues that, once Lieutenant White spoke with the defendant and determined that he was not in medical distress, "community caretaking functions ceased at that moment, and all subsequent actions by law enforcement officers during the stop were part of a criminal investigation" which required a separate exception to the warrant requirement. "The 'automobile exception' to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband." *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009); *see Carroll v. United States*, 267 U.S. 132, 149 (1925).

The defendant contends that, because trained officers "can[not] detect olfactory difference between lawful hemp and unlawful marijuana," the officers' knowledge at the time they commenced the search of the defendant's vehicle was insufficient to establish

probable cause. Our supreme court recently held that there is no per se rule of probable cause based on a positive alert from a drug-sniffing dog and reiterated that a probable cause determination is based on the totality of the circumstances. *State v. Green*, 697 S.W.3d 634, 642 (Tenn. 2024); *see State v. Green*, M2022-00899-CCA-R3-CD, 2023 WL 3944057, at *3 (Tenn. Crim. App. June 12, 2023) (noting the legal analysis is the same whether the smell of marijuana was detected by an officer or a drug canine).

Probable cause requires "more than a mere suspicion," *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005), "but less than absolute certainty." *State v. Reynolds*, 504 S.W.3d 283, 300 (Tenn. 2016). "Probable cause, as its name implies, deals with probabilities." *State v. Tuttle*, 515 S.W.3d 282, 300 (Tenn. 2017). "These [probabilities] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949), *see Tuttle*, 515 S.W.3d at 300.

In this case, the trial court found that the positive odor of marijuana along with "other circumstances surrounding the stop" provided probable cause for the search of the defendant's vehicle, and the evidence does not preponderate against the trial court's factual findings. At the motion to suppress hearing, Lieutenant White testified that he observed the defendant's vehicle stopped at an intersection with the defendant slumped in the driver's seat. Lieutenant White attempted to rouse the defendant with his lights and siren, but the defendant remained motionless. Lieutenant White then knocked on the defendant's window, shined his flashlight inside the vehicle, and "hollered" several times. When the defendant finally rolled down the window, Lieutenant White immediately "smelled an odor of marijuana from inside the vehicle." Officer McClain, who responded to Lieutenant White's request for backup, approached the defendant's vehicle and also smelled the odor of marijuana coming from the vehicle. In addition, Officer McClain observed a black 9-millimeter Keltec rifle in plain sight on the passenger floorboard and a backpack on the passenger seat. The defendant was removed from the vehicle and frisked for weapons. On Officer McClain's body cam video, which was reviewed by the trial court, Lieutenant White asked the defendant if he "smoke[d] weed," and the defendant replied, "Yes." Lieutenant White then asked the defendant if he smoked weed earlier that night and if that was why he was asleep. The defendant again replied, "Yes, sir."

Based on the totality of the circumstances, we hold that all of the facts available to Lieutenant White and Officer McClain at the time would "warrant a person of reasonable caution in the belief that contraband or evidence of a crime [was] present." *Florida v. Harris*, 568 U.S. 237, 243 (2013). In addition to both Lieutenant White and Officer McClain smelling "an odor of marijuana from inside the [defendant's] vehicle," the defendant admitted to smoking "weed" earlier that evening and told Lieutenant White that is why he was sleeping in his vehicle. "Response[s] to questioning by police officers [are]

a common source of probable cause determinations." *State v. Shrum*, 643 S.W.2d 891, 894 (Tenn. 1982), *abrogated on other grounds by Tuttle*, 515 S.W.3d at 305. Although the defendant argues a trained officer cannot tell the difference between the smell of legal hemp and illegal marijuana, the possibility of an officer altering to hemp as opposed to marijuana would "merely affect a fact's weight and persuasiveness [in the probable cause analysis], not its inclusion in the analysis [altogether]." *Colorado v. Zuniga*, 372 P.3d 1052, 1058 (Colo. 2016). Thus, the evidence does not preponderate against the trial court's factual finding that there was probable cause to search the vehicle. The defendant is not entitled to relief on this issue.

## II. Sufficiency[1]

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

---

[1] Although the defendant contends the evidence was insufficient "to sustain the convictions in this case," the only mention of his drug paraphernalia conviction (count six) occurs in a footnote in which he states "[t]he only proof in support of the charge in [c]ount 6 for misdemeanor possession of paraphernalia was that [the defendant] intended to use the digital scale and baggies for the sale or delivery of the cannabis found in his possession." "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); *see also* Tenn. R. App. P. 27(a)(7).

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)).  "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient."  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## A.      Possession of Marijuana with the Intent to Sell and Deliver (counts one and two)

The defendant argues that the evidence is insufficient to support his convictions for possession of marijuana with intent to sell and deliver because the State failed to prove the percentage of THC concentration in the substance found in the defendant's possession. The State contends that the evidence is sufficient to support his convictions.

It is an offense for a defendant to knowingly "possess a controlled substance with intent to . . . deliver or sell the controlled substance."  Tenn. Code Ann. § 39-17-417(a)(4); *see id.* § 39-17-415 (providing marijuana is a Schedule VI controlled substance).  At the time of the December 23, 2021 offense, marijuana was defined as "all parts of the plant cannabis," as defined in Tennessee Code Annotated section 39-17-402(16)(A) (2021). However, marijuana does not include hemp, which is defined as "the plant cannabis sativa L. and any part of that plant . . .with a delta-9 tetrahydrocannabinol (THC) concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis."  Tenn. Code Ann. §§ 39-17-402(16)(C), 43-27-101(3).  On April 4, 2019, the possession of hemp, both industrial and non-industrial, was legalized in Tennessee.

Though the defendant correctly notes that the State failed to produce a lab report showing that the seized substance had a THC concentration of more than 0.3%, the State did present the testimony of Agent DePew and the results of a presumptive lab test identifying the substance as marijuana.  Furthermore, the State is not required to test the alleged substance for the defendant to be convicted of a drug offense. *See State v. Schutt*, No. M2022-00905-CCA-R3-CD, 2023 WL 6120739, at *7 (Tenn. Crim. App. Sept. 19, 2023) ("[C]hemical analysis is not a prerequisite to establish the identity of a controlled substance, and the essential elements of a drug related offense may be established circumstantially."), *no perm. app. filed*.  A guilty verdict may be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).  This is because

[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Holland v. State*, 348 U.S. 121, 140 (1954); *Dorantes*, 331 S.W.3d at 380.

"A criminal offense may, of course, be established exclusively by circumstantial evidence." *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973)). However, it is up to the jury to decide the significance of the circumstantial evidence, as well as "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence.'" *Id.* (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

When viewed in the light most favorable to the State, the proof at trial revealed that Lieutenant White observed the defendant's car stopped at an intersection with the defendant "leaned back with his head slumped over" in the driver's seat. When the defendant rolled down the window after Lieutenant White knocked several times, Lieutenant White immediately "smelled an odor of marijuana from inside the vehicle." As the defendant was removed from the vehicle, Lieutenant White asked if the defendant "smoked weed" earlier that night, and the defendant stated that he did. The defendant's mother, who was on the phone with the defendant, encouraged the defendant to be truthful about the fact that he smoked "weed." Upon searching the defendant's vehicle, Officer McClain recovered a black 9-millimeter Keltec rifle, "four individually wrapped bags of marijuana, approximately 80.7 grams of marijuana, 19 clear unused baggies, [and] a digital Z scale." The defendant also had $729 in cash in his wallet. Agent DePew presumptively identified the substance found in the defendant's vehicle as marijuana with a gross weight of 76.77 grams. Agent DePew testified that on approximately forty prior occasions she performed additional testing on substances that presumptively tested positive as marijuana, and on each occasion, the substance was confirmed to be marijuana. Based on this evidence, a rational jury could find possession of marijuana with intent to sell and deliver beyond a reasonable doubt. The defendant is not entitled to relief on this issue.

**B.      Possession of a Firearm During the Commission of a Dangerous Felony (counts three and four)**

- 9 -

As relevant to this case, "[i]t is an offense to possess a firearm . . . with the intent to go armed during the commission of or attempt to commit a dangerous felony." Tenn. Code Ann. § 39-17-1324(a). A person acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* § 39-11-302(a). "A felony involving the . . . possession with intent to sell, manufacture or distribute a controlled substance" is a dangerous felony. *Id.* § 39-17-1324(i)(1)(L). The evidence at trial showed Officer McClain recovered a black 9-millimeter Keltec rifle from the defendant's vehicle along with four individually wrapped bags of marijuana, 19 clear unused bags, a digital scale, and a large amount of cash. Therefore, the evidence is sufficient to support the defendant's conviction, and the defendant is not entitled to relief on this issue.

## *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE

- 10 -